**UNITED STATES of America,
Appellee,**

v.

**Rafael CASIANO, Appellant.**

**No. 424, Docket 35282.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 14, 1971.

Decided March 25, 1971.

Friendly, Circuit Judge, dissented
and filed opinion.

Jon A. Sale, David A. Luttinger, Asst.
U. S. Attys., Whitney North Seymour,
Jr., U. S. Atty., for appellee.

Gilbert S. Rosenthal, New York City,
for appellant.

Before WATERMAN, FRIENDLY
and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Rafael Casiano and Louis Fuselli were
arrested by agents of the Federal Bu-
reau of Narcotics and Dangerous Drugs
on May 9, 1967 and charged with selling
marijuana to an undercover agent, Ar-
thur Goldenbaum, on May 2 and May 9.[1]
Fuselli entered a guilty plea and was
sentenced as a juvenile offender. He
served two years at the Federal Institu-
tion at Ashland, Kentucky, and was re-
leased on parole prior to Casiano's trial.

In 1969 a second, superseding indict-
ment was filed against Casiano alone.
In it the Grand Jury alleged that Casi-
ano had unlawfully transferred 1.587
kilograms to Goldenbaum on May 2 and
six kilograms to Fuselli on May 9.
Trial was to a jury which acquitted Cas-
iano on the May 2 count but convicted
him on the May 9 count. Casiano was
sentenced to a five year term of impris-
onment which he is presently serving,
and he appeals his conviction upon the
May 9 count. We affirm the conviction.

Other than the government chemist
who testified that the substance alleged-

___

1. It appears that both Fuselli and Casiano
were charged with violating 21 U.S.C. §
176a on the two occasions and with vio-

lating 26 U.S.C. §§ 4744(a) and 7237(b)
with respect to the May 9 transfer.

ly transferred by Casiano was indeed marijuana, the only other government witness was Agent Goldenbaum. He told the jury that he telephoned Fuselli on the morning of May 9 seeking to make a purchase of 25 pounds of marijuana. Fuselli asked him to come to Fuselli's apartment at noontime. When Goldenbaum arrived, accompanied by an informant, Fuselli stated that the marijuana was not then available because "his man, Ralphie," was working at the time and was unable to make the delivery. Goldenbaum was told to return at 7:00 P.M., by which time "Ralphie" would be able to deliver the marijuana. Goldenbaum further testified that he returned at the appointed time, again with the informant, and was introduced by Fuselli to "Ralphie," the appellant Casiano, in the living room of the apartment;[2] that, "drifting" into the kitchen, Fuselli indicated that he had only 15 pounds but could obtain the rest the next day; that Goldenbaum consented to that arrangement; that Fuselli then went into the living room, returned to the kitchen with a shopping bag holding eight bricks of marijuana, and placed the bag on the kitchen floor; and that Casiano, whose presence in the kitchen had not been previously mentioned by Goldenbaum, then took a scale from the oven and began to weigh and mark the bricks; that Goldenbaum ordered the informant to leave the apartment to get the purchase money; and that Casiano told Fuselli to go with the informant and "watch him." Fuselli was arrested soon after he left the apartment.

In a conversation following the departure of the informer and Fuselli, Goldenbaum testified that Casiano told Goldenbaum to approach him directly in the future and thereby to eliminate the expense of a middleman; he bragged that

he could provide "up to half a ton, if you want it," and explained that Fuselli was a $50-a-week employee who kept the marijuana in his apartment and took the risk of meeting potential purchasers.

About this time other agents entered the apartment and arrested Casiano. A search revealed that he was carrying approximately $1,070 in cash on his person, of which $250 was part of the money Goldenbaum had given to Fuselli when the May 2 purchase was consummated.[3]

Fuselli was the only defense witness. He admitted making the May 2 sale and negotiating the May 9 sale but adamantly denied that Casiano was in any way involved in either transaction. He stated that he had asked Casiano to hold some $400–450 for him during the evening of May 9 because he had a feeling that he would be arrested that night, as indeed he was. When so arrested Fuselli had no money on his person. He testified that one "Bob Loco," a Roberto Morales, who was said to have been in the apartment when Casiano was arrested, was his "connection," not Casiano.

On cross-examination Fuselli conceded that he had told two Assistant United States Attorneys, once prior to his trial, and once while at Ashland, that he had been selling for Casiano and that Loco was only Casiano's delivery boy. On re-direct he explained that the first statement was made solely in hope of being released, and the second so as to increase the likelihood of his obtaining parole.

Appellant, relying on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), complains that the prosecution should have been compelled to produce the informant, or, at least, to reveal his name, because only he could confirm or deny the conflicting testimo-

2. Also present in the apartment, according to Goldenbaum, was Roberto Morales (Bob Loco) who was arrested but not prosecuted.

3. Goldenbaum's testimony that he had carefully noted the serial numbers on the

bills with which he had made the May 2 purchase was the subject of extensive cross-examination in an effort to impeach the agent's credibility.

ny relative to most of the events of May 9. The defense certainly could have used corroboration of Fuselli's version of the meetings in light of his inconsistent out-of-court statements. "Where the disclosure of an informant's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro, supra,* at 60–61, 77 S.Ct. at 628. The privilege exists to further and protect "the public interest in effective law enforcement," *Roviaro, supra,* at 59, 77 S.Ct. at 627, and though its protection is not absolute, a showing of one or more of the factors named above is a mandatory precedent to forced disclosure. Nevertheless, after making a most perfunctory request for the informant's name[4] which the court rejected "at this time," no attempt was made to justify a real need for the disclosure, nor was the request ever later renewed. Under the circumstances of this case, the court's ruling was proper. Indeed, there is good reason to believe that a forced disclosure here would have been immaterial to the case for the defense. First, it is not unreasonable to assume that Fuselli knew the informant inasmuch as he had been initially introduced to Goldenbaum by him. Defense counsel's question, "Was his name Jamie?" lends support to the inference that Casiano also knew him. Moreover, Casiano made no attempt to produce Morales (or Loco) who was also present when the transfer occurred. And in any event the informant was not present when Casiano claimed to Goldenbaum that he was Fuselli's supplier, the most damaging testimony to the defense in the case if the jury believed the agent.

Appellant's other claims can be summarily dismissed. A six-pronged attack upon the court's charge to the jury is without merit. The charge properly defined the jury's role in weighing credibility, a crucial factor in the case, and properly applied the law relative to the facts. The appellant's four other claims concerning the charge are also devoid of any merit.

Finally, appellant argues that the record is devoid of any proof of any transfer of marijuana to Fuselli by Casiano on May 9. However, there was ample evidence that Casiano on that date supplied the 15 pounds which Fuselli later attempted to sell to Goldenbaum. And there was sufficient evidence to permit the jury to conclude that Fuselli was not acting as Casiano's agent in the transaction. Fuselli brought the mari-

4. The pertinent portions of the trial record follow:

> Counsel for Casiano: Now you met Fuselli through a man whom you described as an informant?
>
> Goldenbaum: Yes, sir.
>
> Q. Did that informant have a name? A. Yes, sir.
>
> Q. What was his name?
>
> Asst. U. S. Attorney: That is objected to, your Honor.
>
> The Court: Sustained at this time.
>
> Q. Was his name Jamie?
>
> Asst. U. S. Attorney: I would object to the question concerning the identity of the informant.
>
> The Court: Objection sustained.
>
> Counsel for Casiano: I respectfully except, your Honor.
>
> \* \* \* \* \*
>
> Q. When did you last see this informant? A. I can't say exactly. I would say approximately three years ago.
>
> Q. Do you know whether or not he is still an informant for the Bureau? A. He is not.

> Q. You know that he is not? A. Yes, sir.
>
> Q. Do you know whether or not he is in jail? A. I do not know.
>
> Q. Did he have any case pending against him at that time? A. He did not.
>
> Q. Do you know whether or not the Bureau has any address for him? A. Yes, sir, they do have an address.
>
> Counsel for Casiano: I submit at this time, if the Court pleases, that I am entitled to know the name and address of this alleged informant who was present at this alleged conversation between Fuselli and this agent.
>
> The Court: What do you say, Mr. Luttinger?
>
> Luttinger (Asst. U. S. Atty.): I don't say that there's any showing at all that the informant's identity is required at this time.
>
> The Court: I don't, either. Objection sustained.
>
> Counsel for Casiano: I respectfully except, your Honor.

juana into the kitchen from another part of his own apartment; and Casiano's offer to save Goldenbaum money by eliminating the middleman suggests that Fuselli had at least some power to set his own prices or was getting a cut of the money.[5]

The judgment of conviction is affirmed.

FRIENDLY, Circuit Judge (dissenting):

I would reverse this conviction since the jury was not adequately instructed with respect to what facts it was obliged to find in order to convict Casiano of a "transfer" to Fuselli.

Although 26 U.S.C. § 4742(a) does not define the meaning of "transfer," some light is cast by the penalty provision, § 7237(b), which refers to "the sale, barter, exchange, giving away, or transfer." This indicates an intention on the part of Congress that something more is required than the mere handing of marijuana from one person to another without any change in effective control.

If Fuselli was merely Casiano's servant, it is very old law that no change in possession was effected. See Holmes, The Common Law 179 (Howe ed. 1963). The Government therefore was required to show that Fuselli was acting as a principal, either because he had acquired title to the marijuana or, at the very least, because Casiano had put the marijuana in his hands to do with as he wished. While it may be that the Government produced evidence barely sufficient to warrant submission of this issue to the jury, Casiano was entitled to an instruction which clearly pointed up what the issue was.

I find nothing in the charge which sufficiently enlightened the jury on this subject. The judge defined a transfer as "the giving, the turning over of marijuana either by yourself or by your agent in your behalf." This language was apt enough with respect to the first count, but gave no help on the second. Indeed, it was quite confusing because the first count alleged, in effect, that Fuselli was Casiano's employee in the earlier transaction, whereas the second alleged, in effect, that Fuselli was something more in the second. The difficulty was compounded by a further instruction that "if you are satisfied beyond a reasonable doubt that the defendant knowingly had control over that marijuana, either actually or constructively, you may convict him." While the objection of defense counsel could have been more clearly stated, he said enough to raise the point. In any event I would apply the plain error rule in so close a case as this.

---

5. Although the trial court's instructions to the jury did not define a "transfer" with precision, they did convey the concept that the acts of one's agent are one's own acts, which in turn suggests that a merely physical transfer to one's agent is not a "transfer" under § 4742(a). A more explicit statement would certainly have been desirable, but none of appellant's objections to the charge suggested, even indirectly, the need for clarification. Appellant is therefore precluded from pressing the claim before us. Cf. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).