**UNITED STATES of America,
Appellee,**

v.

**John VAN ORSDELL,
Defendant-Appellant.**

**No. 1111, Docket 75–1071.**

United States Court of Appeals,
Second Circuit.

Argued June 12, 1975.

Decided Sept. 8, 1975.

Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 796.

Mark Lemle Amsterdam, New York City, for defendant-appellant.

Don D. Buchwald, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the Southern District of New York and Lawrence S. Feld, Asst. U. S. Atty., of counsel), for appellee.

Before FEINBERG and VAN GRAAFEILAND, Circuit Judges, and DOOLING,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment convicting defendant on both conspiracy and substantive counts for sending threatening mail for purposes of extortion in violation of 18 U.S.C. §§ 371 and 876. We affirm.

On June 30, 1973, defendant mailed to the Concord Hotel a xerox copy of an anonymous letter in which he threatened to put LSD in the hotel's water supply unless $320,000 in old one-hundred dollar bills was paid in a specified manner. The letter cautioned against calling in the FBI and warned that it was not intended as a hoax. Following defendant's eventual arrest, he insisted that the plot was in fact planned as an "exposé" of the FBI and was intended as a hoax. The jury was not convinced.

In preparation for his get-rich-quick scheme, defendant had rented a safe deposit box at the East New York Savings Bank on 64th Street and Third Avenue in New York City. In it, he kept the original of the extortion letter, and towards it he headed with the $320,000 which had been left for him as directed in a rest room of the Grand Central Station. Upon arrival at the bank, defendant and his cohorts discovered that the money was fake. They also discovered a transmitting device concealed in the bag which, unknown to them, was not functioning. The money quickly found its way to the bottom of the Hudson River.

The jury was entitled to conclude that it was at this time that the plan to "expose" the FBI was born. A letter

* District Judge, United States District Court for the Eastern District of New York, sitting by designation.

threatening disclosure of its "bungling" was sent to the FBI; cryptic newspaper advertisements were placed or attempted to be placed, and reporters receptive to this type of "exposure" were contacted.

When one of these columnists asked to see the original letter, defendant telephoned from Philadelphia to one of his cohorts in New York City and requested him to secure the letter from the safe deposit box. When the cohort arrived at the bank, he was arrested by the FBI who had staked it out.

Appellant now asserts as error the alleged inadequacy of the government's affidavits negating the use of illegal wiretaps, and its refusal to disclose the identity of the individual who furnished the FBI with information which led it to the bank.

The original affidavits submitted by the FBI stated, among other things, that "no one identifiable as John Calvin Van Orsdell, born August 23, 1933, was the subject of a direct electronic surveillance by the Federal Bureau of Investigation". The affidavit also stated that defendant's conversation relative to the money-drop was "consensually monitored" and that, other than this, "John Calvin Van Orsdell was never monitored by any other electronic device of the Federal Bureau of Investigation nor was an electronic surveillance maintained on premises which were known to have been owned, leased or licensed by him".

When defendant's counsel expressed dissatisfaction with the above quoted phrase concerning "direct" electronic surveillance of "John Calvin Van Orsdell", a further affidavit was submitted which stated in part:

"It was not my intention to equivocate in any manner whatsoever through the use of the word 'direct' in paragraph

two of my original affidavit dated October 11, 1974.

"I previously made a careful and diligent search of appropriate records of the Federal Bureau of Investigation and determined that no one identifiable as John Calvin Van Orsdell or any one by his known aliases, including Crayola, was ever monitored by any electronic device of the Federal Bureau of Investigation."

Although appellant made no further protest in the District Court concerning the sufficiency of these affidavits, he now argues anew in this Court that they were inadequate.[1]

Conclusory claims of illegal wiretapping do not lead inevitably to evidentiary hearings. Such claims may be refuted by proper affidavits of denial. *Matter of Buscaglia,* 518 F.2d 77 (2d Cir. 1975). We believe the affidavits in the instant case were sufficient. These affidavits state that, other than the one consensual monitoring of defendant's ransom telephone conversation, neither the named defendant nor any of his known aliases was ever monitored by any electronic device of the FBI. Apparently, these affidavits satisfied appellant in the District Court. They satisfy us here.

With regard to appellant's second contention, this Court has on numerous occasions upheld district courts' refusals to compel identification of informers. *See, e. g., United States v. Casiano,* 440 F.2d 1203 (2d Cir.), *cert. denied,* 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68 (1971); *United States v. Simonetti,* 326 F.2d 614 (2d Cir. 1964); *United States v. Coke,* 339 F.2d 183 (2d Cir. 1964); *United States v. Russ,* 362 F.2d 843 (2d Cir.), *cert. denied,* 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966).

1. As a further response to such argument, counsel for the Government handed up to the Court for its consideration a telegram directed to him from FBI Washington headquarters which read in part as follows:

"Phonetic listings in the Philadelphia and Washington, D. C. FBI Field Offices were checked in accordance with normal electronic surveillance (ELSUR) search procedures when the original electronic surveillance

check was made. As to Van Orsdell's alias 'Spendlove', phonetic and actual listings in the Washington, D. C. and Philadelphia FBI Field Offices have just been checked and are negative. All ELSUR files have been checked both in FBI headquarters and in specified Field Offices."

Since this telegram was not in affidavit form, we consider it only as cumulative of the affidavits submitted below.

■ As we pointed out in *Casiano,* the privilege of nondisclosure exists to further and protect the public interest in effective law enforcement.

Appellant's only contention in support of disclosure is that the unnamed informant might have corroborated his intent to "expose" the FBI. Defendant himself testified as to this alleged intent, and he also offered the testimony of several others in whom he had confided. Certainly, no one knew better than he who his confidants were. Moreover, such testimony, if it existed, would merely have been cumulative. *See Russ* and *Simonetti, supra.*

■ The determination as to whether identification of an informer is necessary for a fair disposition of a defendant's case is a task best left to the trial court's informed discretion. *United States v. Soles,* 482 F.2d 105, 109 (2d Cir.), *cert. denied,* 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973). We cannot say that under the circumstances of this case, the District Judge's ruling was an abuse of such discretion.

We affirm.