**UNITED STATES of America**

v.

**Norman TURKISH, Jules Nordlicht, Michael A. Kellogg, Frank Knell, and Donald B. Conlin, Defendants.**

**No. 78 Crim. 251.**

United States District Court,
S. D. New York.

June 13, 1978.

On Pre-Trial Motion Aug. 24, 1978.

On Motions to Dismiss Aug. 24, 1978.

**876**

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of N. Y. by Paul Vizcarrondo, Jr., Asst. U. S. Atty., New York City, for the United States.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendant Turkish.

Maloney, Viviani & Higgins, New York City, for defendant Kellogg.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Nordlicht.

Guggenheimer & Untermyer, New York City, for defendant Knell.

Baer, Marks & Upham, New York City, for defendant Conlin.

## MEMORANDUM

VINCENT L. BRODERICK, District Judge.

Five defendants are charged under 18 U.S.C. § 371[1] with conspiracy to defraud the United States "by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury in the collection of income taxes."

The alleged objects of the conspiracy were a) the fraudulent creation of losses for an oil company, C. R. Rittenberry & Associates, Inc. ("Rittenberry"), through rigged commodity futures transactions on the Crude Oil Market which would guarantee the realization by the oil company of fraudulent tax losses in one fiscal year and matching gains in the next; and b) the manipulation of contract prices on the Crude Oil Market "to achieve the predetermined losses and gains."

Defendants Michael A. Kellogg, Donald B. Conlin and Frank Knell ("the moving defendants") each moved for transfer of the action against him to the district of his place of residence—respectively the Middle District of California, the District of New Jersey, and the Eastern District of New York. Each urged that 18 U.S.C. Section 3237(b) mandates such a transfer. By Order dated May 31, 1978, I denied the motions for transfer. This memorandum delineates the bases for that denial.

There are no substantive charges against any of the moving defendants. The two remaining defendants, Norman Turkish and Jules Nordlicht, who are also charged in the conspiracy count, are additionally charged with substantive counts of tax evasion under 26 U.S.C. § 7201[2] and filing false tax

---

1. § 371. Conspiracy to commit offense or to defraud United States

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such

conspiracy shall not exceed the maximum punishment provided for such misdemeanor. June 25, 1948, c. 645, 62 Stat. 701.

2. § 7201. Attempt to evade or defeat tax

 *Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall,* in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 851.

returns under 26 U.S.C. § 7206(1).[3] The substantive charges with respect to each pertain to his own federal income tax returns. Turkish and Nordlicht allegedly claimed deductions for fraudulent losses from commodities futures trading for their own accounts. Turkish also allegedly failed to report as income monies he received from Rittenberry and from one Joseph R. Hamilton, as compensation for his role in the commodities market manipulation to which the conspiracy charge pertains.

18 U.S.C. Section 3237(b)[4] provides in pertinent part that "where an offense involves use of the mails[5] and is an offense described in section 7201 or 7206(1), (2),[6] or

---

**3.** Since other provisions of 26 U.S.C. § 7206 are referred to hereafter, those provisions are also set forth:

§ 7206. Fraud and false statements
Any person who—

(1) Declaration under penalties of perjury.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or

(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; or

\* \* \* \* \* \*

(5) Compromises and closing agreements.—In connection with any compromise under section 7122, or offer of such compromise, or in connection with any closing agreement under section 7121, or offer to enter into any such agreement, willfully—

(A) Concealment of property.—Conceals from any officer or employee of the United States any property belonging to the estate of a taxpayer or other person liable in respect to the tax, or

(B) Withholding, falsifying, and destroying records.—Receives, withholds, destroys, mutilates, or falsifies any book, document, or record, or makes any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax;

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 852.

**4.** § 3237. Offenses begun in one district and completed in another

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

(b) Notwithstanding subsection (a), where an offense is described in section 7203 of the Internal Revenue Code of 1954, or where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5), of such Code (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: *Provided*, That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.

**5.** The government argues that the moving defendants' motions must be denied, because the indictment does not allege any use of the mails and defendants have not submitted affidavits indicating that the mails were used to commit the crime with which they are charged, *citing United States v. Youse*, 387 F.Supp. 132, 134–35 (E.D.Wis.1975). The court in *Youse* did not require that defendants submit affidavits; it held that the court may consider affidavits as well as the indictment in determining whether the offense involved use of the mails. The government's suggestion that defendants be required to indicate their use of the mails in commission of an alleged crime is patently inappropriate as violative of the spirit of the Fifth Amendment to the United States Constitution.

Moreover, it is probable that, if the conspiracy alleged in fact existed, use of the mails was involved; checks, order confirmations, and the like presumably were used and traveled by mail.

**6.** *See* footnote 3, *supra*.

(5)[7] of [the Internal Revenue] Code . . and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may . . . elect to be tried in the district in which he was residing at the time the alleged offense was committed: *Provided,* That the motion is filed within twenty days after arraignment."[8] Each of the moving defendants has established by affidavit that at the time of the conspiracy alleged in the indictment he resided in the district to which he seeks transfer, and that he still resides there.

■ The defendants assert that the thrust of the conspiracy count is that the defendants are "charged with conspiracy to defraud the United States by assisting in the establishment of fraudulent tax deductions and the filing of false and fraudulent income tax returns." Defendants note that if they had been charged substantively (as were Turkish and Nordlicht) with tax evasion and filing false and fraudulent returns, they would have been entitled to elect transfer under Section 3237. They suggest that the conspiracy count is within Section 3237 as an appendage, as it were, of the substantive counts.

The moving defendants' equation does not comport with the language or spirit of Section 3237(b). Section 3237(b) specifically delineates the contours of its application—it applies to offenses described in 26 U.S.C. Sections 7203,[9] 7201 and 7206(1), (2) and (5). The purpose of Section 3237(b) is to permit citizens to choose to defend themselves from certain tax charges in their districts of residence, rather than in the districts where the tax returns involved were filed. In a proper case such a defendant has the option, which when duly exercised must be honored by the court, of making his defense in his home district rather than in the district of the tax collector. *See* discussion of legislative history in *United States v. De-Marco,* 394 F.Supp. 611, 617 (D.D.C.1975).

The moving defendants concede, as they must, that Section 3237(b) does not expressly provide for transfer of actions brought under the conspiracy section (18 U.S.C. Section 371).

■ In the absence of an express mandate in Section 3237(b), the application of Section 3237(b) to a conspiracy count is within the discretion of the court.[10] Factors for consideration include the relationship between the conspiracy charged and a violation which is or could be charged under one of the enumerated sections,[11] the geo-

---

7. *See* footnote 3, *supra.*

8. The government submits that the motions by defendants Conlin and Knell must be denied, because the motions were filed 22 days after arraignment on April 20, 1978.

 Conlin asserts that the time period for his motion should run from April 24, 1978, the date he entered a plea of not guilty before me, rather than April 20, 1978, the date Judge MacMahon ordered that a plea of not guilty be entered for him in his absence.

 I do not reach this issue. In the exercise of my discretion pursuant to Rule 45(b), F.R.Cr.P., I find that the two day delay by defendants Conlin and Knell was due to "excusable neglect," and the time period for submission of the Section 3237(b) motion is deemed enlarged by two days.

9. § 7203. Willful failure to file return, supply information, or pay tax

 Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 851.

10. The government certainly may not circumvent the legislative intent expressed in 18 U.S.C. § 3237(b) by couching a substantive violation in terms of conspiracy. *See United States v. Dalitz,* 248 F.Supp. 238 (S.D.Cal. 1965). However, to the extent that any of the cases cited by defendant stands for the proposition that application of Section 3237(b) when invoked is mandatory to conspiracies under 18 U.S.C. Section 371, I respectfully disagree.

11. Defendants do not contend that Section 7203 applies: there was no wilful failure to file a return. Section 7206(5) similarly does not apply; there was no Section 7122 compromise.

graphical locale of the alleged conspiracy, and judicial economy.

a) *Filing of false returns.* Turkish and Nordlicht are charged with violations of 26 U.S.C. Section 7206(1) through wilfully making and signing their own tax returns, under penalty of perjury, while not believing the truth of every material matter alleged therein. No charges are brought against anyone with respect to these returns under Section 7206(2), which prohibits anyone from wilfully aiding or assisting another in the preparation or filing of a false return. It is not alleged that the moving defendants had anything to do with the filing of these returns: the conspiracy that is charged does not pertain to the filing of tax returns or the evasion of tax by Turkish and Nordlicht. On the facts alleged in the indictment, the moving defendants could not be charged with violation of Section 7206(2), and there is no nexus between the conspiracy and the alleged Section 7206(1) violation by Turkish and Nordlicht.

b) *Tax evasion.* Defendants Turkish and Nordlicht are also charged with violation of 26 U.S.C. Section 7201, which prohibits wilful attempts to evade or defeat a federal tax, or the payment thereof. There is no allegation that any of the moving defendants attempted to evade tax. Nor is the evasion of tax by Nordlicht or Turkish alleged as an object or purpose of the conspiracy count. While it may develop as the evidence comes in at trial that the actions of the moving defendants in the course of the conspiracy aided and abetted Turkish and Nordlicht in their alleged violation, Section 7201, unlike Section 7206, does not have a provision comparable to Section 7206(2), prohibiting anyone from wilfully aiding or assisting another to evade tax. Section 7201 therefore does not apply to the moving defendants through Nordlicht and Turkish.

I have also considered the possibility of Section 7206(2) violations by the moving defendants in the course of the conspiracy if false returns were filed by Rittenberry, aided and assisted by the moving defendants. Although Rittenberry is not named as a defendant in the indictment, the government may not avoid Section 3237(b) by failure to name a defendant or to charge a violation which joins the actions of the moving defendants to a section enumerated in Section 3237(b).

However, even assuming the filing of false returns by Rittenberry, Section 7206(2) does not apply. The conspiracy alleged herein was a manipulation of a futures market, and creation of false losses for Rittenberry—there is no conspiracy alleged which entailed the preparation or filing of a false return by Rittenberry or anyone else, or the aiding or assisting thereof. *Cf. United States v. DeMarco, supra,* in which Section 3237(b) was held to apply to a Section 371 conspiracy count. There, Mr. Nixon's tax attorney and his appraiser allegedly prepared the tax return and supporting papers, including one which predated a charitable contribution by Mr. Nixon.

Presumably Rittenberry could also have been charged with tax evasion in violation of 26 U.S.C. Section 7201, in relation to which it might have been aided by the moving defendants' role in the conspiracy alleged. However, as already noted, Section 7201 does not have an aiding and assisting clause, as does Section 7206, and thus the application of Section 3237(b) to the moving defendants would not be mandated.

Nor does Section 7201 apply to the moving defendants directly. None of the moving defendants is charged with evading taxes; their tax returns are not a subject matter of this action. *Cf. United States v. Dalitz,* 248 F.Supp. 238 (S.D.Cal.1965), where Section 3237(b) was held to apply to a one count conspiracy indictment under Section 371: in *Dalitz* the conspirator who was granted a Section 3237(b) transfer was himself the taxpayer.

The moving defendants also refer to *United States v. Rosenberg,* 226 F.Supp. 199 (S.D.Fla.1964), where the court granted a Section 3237(b) motion to transfer an action charging defendants with conspiracy under 18 U.S.C. Section 371. In *Rosenberg,* unlike the case before me, the moving defendants were also charged with substantive violations of Section 7201.

This is not a case, like those which prompted enactment of Section 3237(b), where the only tie to the district of prosecution is the place where the ultimate filing of a tax return occurred. To the contrary, the operative locale of the alleged conspiracy was the Crude Oil Market, the central facility for the trading of futures contracts for crude oil. The trades which were the subject matter of the alleged conspiracy were made in the Southern District of New York. Alleged overt acts in furtherance of the conspiracy also include meetings with and calls to defendant Turkish at the offices of Bear Stearns & Company within the Southern District of New York.

I have also considered the burdensome result in terms of judicial economy which the granting of these motions would entail.[12] The non-moving defendants clearly would be prosecuted in the Southern District of New York; defendant Knell would be tried less than three miles away in the Eastern District of New York; defendant Conlin would be tried some ten miles away in the District of New Jersey; and defendant Kellogg would be tried in the Middle District of California.

I find that transfer of the actions against the moving defendants is not in accord with the purpose of Section 3237(b).

## ON PRE-TRIAL MOTIONS

In this order, I dispose of various pre-trial motions in the above-captioned case.

### A. Defense Motions

Defendant Norman Turkish's motion, filed May 31, 1978, for discovery and inspection in connection with his motion for dismissal or suppression due to conflict of interest is denied as moot. An evidentiary hearing on the conflict motion was held before me on July 12–14, 1978 and post hearing briefs have been submitted. Thus there is no need for further discovery.

Defendants Norman Turkish, Frank Knell, Donald Conlin, and Michael A. Kellogg have filed motions for discovery and inspection and bills of particulars.

Preliminarily I take note that Count 1 of the indictment charges defendants with "conspiracy to defraud the United States," a charge which is hardly a paragon of precision. It is not circumscribed by the statutory parameters which are present in the case of a conspiracy to commit an offense. Absent its historical function of reaching areas which Congress has not yet legislatively attended to, a charge of "conspiracy to defraud the United States" under 18 U.S.C. § 371 might well have long since been held to be unconstitutional in failing to delineate with adequate precision the criminal conduct charged. See Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405. Certainly defendants charged with "conspiracy to defraud the United States" are entitled to a relatively definitive statement of what it is that they are charged with having done.

Considerations of the relatively unstructured nature of a charge of "conspiracy to defraud the United States" have influenced the disposition of defendants' motions herein.

### I. Discovery and Inspection

Defendants' discovery and inspection demands are granted to the extent already complied with by the government, and to the further extent indicated below, and in all other respects denied.

a. *Identification of Government Witnesses.* Defendants seek a list of the names and addresses of those people whom the government intends to call as witnesses at trial.

■ It is clear that the defendants are not entitled to this material as of right, and

---

12. In *United States v. Youse*, 387 F.Supp. 132, 134 (E.D.Wis.1975), the court held that "considerations of convenience" do not apply to a Section 3237(b) transfer. However, the conclusion of the court in *Youse* was based upon a mandatory application of Section 3237(b) to violations enumerated in Section 3237(b). In the case before me, the moving defendants are not charged with an "enumerated violation" and determination of the motions is within my discretion.

the decision as to whether they will receive it is within the discretion of the court. The applicable standard is "whether 'a specific showing of need for disclosure by the defendant' outweighs 'a specific showing of need for concealment by the government.'" *United States v. Goldman*, 439 F.Supp. 337, 350 (S.D.N.Y.1977), *quoting United States v. Cannone*, 528 F.2d 296, 302 (2d Cir. 1975).

In *Cannone* the Court of Appeals held that the trial judge had abused his discretion when he mandated the disclosure of the identity of the government witnesses. The Court of Appeals found that the defendants had made no showing of need to counter the government's showing of need for concealment, and the district court had not made a *sua sponte* determination that the danger the government posited was negligible. In *Cannone*, "the defense made only an abstract, conclusory claim that such disclosure was necessary to its proper preparation for trial." *Id.* at 301–302. *See also United States v. Goldman, supra,* 439 F.Supp. at 351.

In the case before me, defendants argue that they need the information sought if they are properly to prepare for trial because there are numerous people who traded in the crude oil market, and the indictment charges a conspiracy covering over fifteen months of activity and involves the entire crude oil market. The government argues that there may be intimidation of witnesses if their identity is revealed because some of them are people with whom the defendants may have contact at work or at social engagements.

Defendants have cited various cases where the trial judge found that disclosure was proper. One of these is *United States v. Price*, 448 F.Supp. 503 (D.Colo.1978). In that case, the defendant posited and the judge utilized various considerations in determining that a list of witnesses should be ordered turned over to defendant. Those factors, paraphrased, are:

(1) Did the offense alleged in the indictment involve a crime of violence?

(2) Have the defendants been arrested or convicted for crimes involving violence?

(3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

(5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?

Application of various of these factors to the instant case leads to the determination that defendants have made a "specific showing of need" outweighing the government's fear of danger from disclosure.

The offense alleged in the indictment is not a crime of violence and defendants have never been convicted or arrested for any offense involving violence. The bulk of evidence will likely involve documents; the government has identified 25,000 documents relating to this case. Defense counsel have represented that defendants will not seek to intimidate witnesses and in fact may not have any contact with witnesses prior to trial.[1] Supplying the witnesses' names prior to trial will not, in my judgment, increase the likelihood that the witnesses will not appear or will refuse to testify at trial. The indictment in this case alleges offenses occurring over at least a fifteen month period. I am not persuaded by the government's fear of intimidation, which is the only specified claim of danger from disclosure.[2]

---

1. As an extra precaution, defendant Turkish represents that only defense counsel, not defendant himself, will communicate with the witnesses.

2. Given the nature of the charges in the indictment and the occupations of the defendants, the danger of intimidation is not discernible. In fact, were I to find that there is danger of

Thus the government shall, within seven days from the date of this order, provide defendants with a list of the names and addresses of those whom the government plans to call as witnesses; this list shall be updated promptly as additional people are added to the list of planned witnesses for the government.

b. *Production of statements by co-conspirators.* Defendants seek discovery and inspection of any statements in the possession of the government made by co-conspirators during the course of and in furtherance of the conspiracy.[3] The government contends that it need not supply this material, *citing United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974). In *Percevault,* the court held that the government could not be compelled to provide statements of co-conspirators whom the government intended to call as witnesses. Where the statements sought are not those of prospective government witnesses, statutory limitations (i. e., 18 U.S.C. Section 3500) do not apply. *See United States v. Fine,* 413 F.Supp. 740 (W.D.Wis.1976).

The government shall, within seven days of the date of this order, provide defendants with copies of statements in the possession of the government or of the New York District Attorney's Office made during the course of and in furtherance of the conspiracy by those co-conspirators whom the government does not intend to call as witnesses at trial.

c. *Identification of documents the government intends to use at trial.* Defendant Turkish seeks a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the government's possession it intends to use at trial, rather than "bury[ing] the defendant in paper" by merely generally making all of the documents available to defendants.

Pursuant to Rule 16(a)(1)(C), F.R.Crim.P., the government must afford the defendants an opportunity to inspect and copy all documents under the control of the government which "are intended for use by the government as evidence in chief at the trial." This phrase has been sensibly interpreted to include not only "documents which will be marked and offered in evidence by the government," but also documents "which will be relied on or referred to in any way by any witness called by the government during its case in chief." *United States v. Countryside Farms, Inc.,* 428 F.Supp. 1150, 1154 (D.Utah, C.D.1977).

The government is directed, within 14 days of this order, to identify to the defendants those documents which it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief.[4] It is further required promptly to identify any other documents when and if a decision is made between now and trial to offer or to use or to refer to such documents.[5]

II. *Bills of Particulars*

Defendants' motions for bills of particulars are granted to the extent already complied with by the government, and to the further extent indicated below and in all other respects denied.

a. *Defendant Turkish.* Defendant Turkish seeks an indication from the government whether the "losses" referred to in paragraph 9 of Count One of the indictment were tax deductible. The

intimidation in this case, it would be a necessary corollary that intimidation can be anticipated whenever a defendant knows the witnesses.

**3.** Statements made by co-conspirators during the course of and in furtherance of the conspiracy are not inadmissible as hearsay. Fed.Rule Evid. 801(d)(2)(E).

**4.** This can be done negatively, if more convenient, by identification of the documents among those made available to defendants which the government does not intend to offer or to use or to refer to.

**5.** This direction is predicated upon the assumption that the documents identified are among those that have been made available to the defendants for inspection and copying. If they are not, they shall promptly be made available for such purposes.

government objects to this request on the ground that it improperly seeks discovery of the government's legal theory of the case. Paragraph 9 sets forth as critical "Objects of the Conspiracy . . . to fraudulently create purportedly tax-deductible losses . . ." The use of the word "purportedly" suggests that the government contends that the losses were not in fact tax deductible. Since indictments must be concise statements of the alleged crime, the use of the word "purportedly" should not be viewed as mere verbiage, without meaning. Certainly, the government may not mislead defendants by the use of a word which has no relevance to or is inconsistent with the government's legal claims. While the government should not be forced to reveal its legal theories, it must clarify ambiguities in its indictment.

The government shall, within seven days of the date of this order, advise defendants whether the government claims that the "losses" referred to in paragraph 9 were or were not tax deductible. If the government claims that the losses were tax deductible, it shall state by whom they were deductible.

Defendant Turkish also seeks a statement of the "other conditions" of the Crude Oil Market referred to in paragraph 10(b) of Count One of the indictment.

In his original request for a bill of particulars, defendant Turkish requested that the government specify the "other conditions of the Crude Oil Market" "fixed" by defendants according to paragraph 10(b) of Count One of the indictment. The government responded, in a letter dated June 2, 1978, page 7, # 5, that the " 'other conditions' . . . included efforts by the conspirators to discourage what little legitimate, non-prearranged trading interest there may have been in the Crude Oil Market . . ." Defendant Turkish contends that the government's response is unclear because of

the phrase "*included* efforts" and seeks an indication whether the government's response sets forth "the full extent of the 'other conditions' in the market." [6]

The government shall, within seven days of the date of this order, indicate whether its prior response indicates the full extent of the "other conditions" referred to in paragraph 10(b), and if the government's prior response is not complete, the government shall complete it.

Finally, defendant Turkish seeks finalization of the government's representation that the government "does not now intend to contend at trial that there were any reasons for the losses by Pressner Trading Corporation referred to in paragraph 3 of Count Two [and paragraph 2 of Count Three] other than the reason set forth in [those] paragraph[s]." [7] The government shall within seven days of this order conclusively indicate to defendant Turkish whether it claims there were any "other reasons" for the losses, and if so, identify the other reasons.

Defendant Turkish seeks definitions of certain words used by the government in the indictment. The government's response thus far has been that the words are used according to their "dictionary meaning." In light of the need for defendants to be apprised as specifically as possible of the crime with which they are charged, the government shall, within seven days of the date of this order, specify the definitions of "manipulation", "pre-arranged", "pre-determined", "rigged", "manipulated" and "fixed" upon which it relies.

██ b. *Defendant Knell.* Defendant Knell has requested that the government identify "[e]ach of the lawful functions of the Department of the Treasury that the conspiracy is alleged to have sought to impede, impair, obstruct and defeat . . ." [8] The government contends that

---

6. Reply Memorandum of Law in Support of Defendant Turkish's Motion for a Bill of Particulars filed June 23, 1978, at page 9.

7. Government's Memorandum in Response to the Defendants' Pre-Trial Motions, filed June 6, 1978, at pp. 8–9. ("Government's Memorandum").

8. Notice of Motion by Knell, filed May 31, 1978, at p. 3, # 12.

884

the indictment sufficiently apprises the defendant of the information sought and that further particularization would divulge the government's evidence and unduly restrict its proof.[9] I disagree.

The indictment charges defendants with "conspiracy to defraud the United States," specifically the Department of the Treasury. The statute itself is not more specific than the language quoted. The Supreme Court has held that the language means ". . . to interfere with or obstruct one of its [the United States'] lawful government functions by deceit, craft or trickery, or at least by means that are dishonest. . . ." *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). Thus an element of the crime charged is interference with or obstruction of a *lawful government function*. Defendants are entitled to know what lawful government functions they are alleged to have interfered with or obstructed, and the government shall, within seven days of the date of this order, so indicate.

B. *Government Motion.*

■ At a pre-trial conference held before me on June 16, 1978 the government represented that it has arrangements with all defendants, except defendant Kellogg, for defendants to provide the government with statements of witnesses for defendants two days before the witness testifies. The government moved for an order directing defendant Kellogg to comply with the terms of this arrangement.

Defendant Kellogg's argument that this arrangement violates his rights under the Fifth Amendment to the Constitution of the United States was rejected by the Supreme Court in *United States v. Nobles,* 422 U.S. 225, 233–34, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). To the extent that any such statements exist, defendant Kellogg shall, two days prior to the testimony of any witness in his behalf, provide the government with "written statements signed, adopted, or approved by the witness after he [or she] has read them or had them read

to him [or her], or substantially verbatim statements that were recorded in some way contemporaneously with the giving of the statement." *United States v. Pulvirenti,* 408 F.Supp. 12, 14 (E.D.Mich.1976). *See also* 18 U.S.C. Section 3500.

SO ORDERED.

### ON MOTIONS TO DISMISS

This action is now before me on motions by defendants Donald B. Conlin, Michael A. Kellogg, Frank Knell and Norman Turkish ("defendants"), pursuant to Rule 12, F.R. Cr.P., to dismiss Count I of the indictment as insufficient for failing to allege the commission of a crime and as unconstitutionally vague as applied. For the reasons hereafter stated, defendants' motions are denied.

■ Count I of the indictment charges defendants with conspiracy "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury in the collection of income taxes" in violation of 18 U.S.C. Section 371. The principal objects of the conspiracy are identified in the indictment as the fraudulent creation of purportedly tax-deductible losses for an oil company client of defendant Kellogg through fixed, rigged, prearranged, and risk-free commodity futures transactions on the Crude Oil Market that would guarantee the realization by the client of a certain amount of losses before the end of its fiscal year and a similar amount of gains in its next fiscal year, and the manipulation of contract prices on the Crude Oil Market to achieve the predetermined losses and gains.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. . . . [T]he language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement

9. Government Memorandum at p. 12, # 12.

of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citations omitted).

The offense charged in the instant indictment is violation of 18 U.S.C. Section 371. Violation of Section 371 occurs "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency

thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy . . . ." The indictment does contain the elements of the offense charged and does fairly inform the defendants of the charge against which they must defend. The indictment charges that the defendants agreed upon means by which the conspiracy would be carried out,[1] and that the object was to defraud an agency of the United States[2] and the indictment recites certain

1. Count I, Paragraph 10 of the indictment:

10. Among the means by which the defendants and their co-conspirators would and did carry out the said conspiracy were the following:

(a) In or around the fall of 1974, the defendant MICHAEL A. KELLOGG, on behalf of an oil company client, and the defendant JULES NORDLICHT, on behalf of Pressner Trading, agreed with and through the defendant NORMAN TURKISH that KELLOGG's client and Pressner Trading would enter into prearranged trades with each other on the Crude Oil Market in a manner directed by TURKISH, which trades would result before the end of the client's fiscal year on October 31, 1974, in predetermined and purportedly tax-deductible losses for KELLOGG's client of a similar amount after October 31, 1974. It was further agreed among the conspirators that the crude oil trades would be executed for KELLOGG's client by the defendants FRANK KNELL and DONALD B. CONLIN and that Pressner Trading's crude oil trades would be executed by co-conspirator Joseph R. Hamilton.

(b) Between in or around September, 1974 and on or about October 25, 1974, the defendants and their co-conspirators rigged bids and offers, executed pre-arranged trades, manipulated market prices and price movements, and fixed other conditions of the Crude Oil Market in furtherance of the aforementioned plan, with the result that KELLOGG's client, C. R. Rittenberry & Associates, Inc. ("Rittenberry & Assoc."), realized a purportedly tax-deductible "loss" of more than $12 million.

(c) In or around November, 1974, after the end of Rittenberry & Assoc.'s fiscal year on October 31, 1974, the defendants and their co-conspirators, through further fixed, rigged and prearranged transactions, arranged for KELLOGG's client, Rittenberry & Assoc., to gain back from Pressner Trading all but approximately $319,000 of the more than $12 million it "lost" through the crude oil trades in or around October, 1974. The net loss by Rittenberry & Assoc. from these crude oil trades was predetermined by the conspira-

tors and, along with the brokerage commissions paid by Rittenberry & Assoc., was the cost to Rittenberry & Assoc. for obtaining the aforementioned fraudulent tax deduction of more than $12 million for its fiscal year ending October 31, 1974.

(d) Beginning in or around the summer of 1975, the defendants and their co-conspirators fixed, rigged and prearranged additional crude oil trades and manipulated the movement of prices on the Crude Oil Market for the purpose of creating for KELLOGG's client purportedly tax-deductible losses in the amount of more than $15 million for its fiscal year ending October 31, 1975, and gains after October 31, 1975 of a similar amount. KELLOGG's client, Rittenberry & Assoc., had a predetermined net loss from these trades of more than $400,000, which, along with the brokerage commissions paid by Rittenberry & Assoc., was the cost to Rittenberry & Assoc. for obtaining a further fraudulent tax deduction of more than $15 million for its fiscal year ending October 31, 1975.

(e) As a means of paying-off the defendant NORMAN TURKISH for his services in pre-arranging the crude oil trades for the benefit of KELLOGG's client, as set forth above, beginning in or around the spring of 1975 and continuing into 1976, Pressner Trading, which had net gains from its crude oil trades with KELLOGG's client, lost in fixed, rigged and prearranged crude oil trades thousands of dollars to co-conspirator Joseph R. Hamilton and to accounts maintained in the name of Hamilton's son, Marshall Hamilton; Joseph R. Hamilton gave to TURKISH approximately ninety percent of the profits from those crude oil trades.

2. Count I, Paragraphs 8 and 9 of the indictment:

8. From on or about January 1, 1974, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, NORMAN TURKISH, JULES NORDLICHT, MICHAEL A. KELLOGG, FRANK KNELL and DONALD B. CONLIN, the defendants, together with co-

overt acts allegedly done in furtherance of the conspiracy.[3] Under *United States v. Del Toro,* 513 F.2d 656, 664 (2d Cir. 1975), this is proper pleading:

"An agreement that might defraud the federal government in its functions at some time in the future, followed by an overt act, makes out the conspiracy charged."

Defendants do not attack the indictment on the grounds that it does not allege an agreement or overt acts. They contend that the indictment fails because neither of the objects of the conspiracy alleged—the creation of tax deductible losses and the manipulation of contract prices on the crude oil market—was unlawful when the alleged conspiratorial agreement was made. Defendants misapprehend the nature of "conspiracy to defraud the United States" under Section 371.

"To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. . . ." *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). *See also United States v. Dennis,* 384 U.S. 855, 861–62, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966). "[T]his statutory language [Section 371] is not confined to fraud as [it is] defined in the common law. . . ."

In the case before me, the government has alleged that defendants obstructed the lawful function of the Department of the Treasury by deceit, craft or trickery or at least dishonest means. The sham tax deductions and the market manipulations are not alleged to be crimes, but presumably are the allegedly "dishonest means" used to obstruct the collection of taxes, a lawful government function. Defendants' accurate statement that the taxpayer has a right "to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits"[4] is inapposite. The indictment does not charge as a substantive offense the avoidance of taxes, or market manipulation, nor does it charge a conspiracy to avoid taxes or to manipulate the market. It charges a conspiracy to defraud the United

---

conspirator Joseph R. Hamilton and other persons known and unknown to the Grand Jury, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury in the collection of income taxes.

9. The principal objects of the conspiracy were to fraudulently create purportedly tax-deductible losses for an oil company client of the defendant MICHAEL A. KELLOGG through fixed, rigged, prearranged, and risk-free commodity futures transactions on the Crude Oil Market that would guarantee the realization by KELLOGG's client of a certain amount of losses before the end of its fiscal year and a similar amount of gains in its next fiscal year, and the manipulation of contract prices on the Crude Oil Market to achieve the predetermined losses and gains.

3. Count I, Paragraph 11 of the indictment:

11. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

(a) From in or around September, 1974, to in or around August, 1976, the defendant MICHAEL A. KELLOGG made telephone calls to the defendant NORMAN TURKISH at the offices of Bear Stearns, 55 Water Street, New York, New York.

(b) From in or around September, 1974, to in or around August, 1976, co-conspirator Joseph R. Hamilton made telephone calls from the floor of the Cotton Exchange, 37 Wall Street, New York, New York, to the defendant NORMAN TURKISH at the offices of Bear Stearns, 55 Water Street, New York, New York, and met with TURKISH at the offices of Bear Stearns, 55 Water Street, New York, New York.

(c) From in or around September, 1974 to in or around August, 1976, the defendant JULES NORDLICHT caused Pressner Trading to place orders for its own account on the Crude Oil market.

(d) From in or around October, 1974, to in or around June, 1976, the defendants FRANK KNELL and DONALD B. CONLIN executed orders from Harris Upham, for the account of Rittenberry & Assoc., in trades on the Crude Oil Market with co-conspirator Joseph R. Hamilton trading for Pressner Trading, for his own account and for others.

4. *Gregory v. Helvering,* 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935).

States; the alleged tax deduction sham and market manipulation are averred only as "way[s] of consummating the conspiracy and which, like the use of a gun to effect a conspiracy to murder, [are] purely ancillary to the substantive offense." *United States v. Manton,* 107 F.2d 834, 839 (2d Cir. 1939).

 Defendants also attack Section 371 as unconstitutionally vague as applied. As discussed above, the statute as used in this indictment clearly sets forth a criminal offense. Defendants cannot reasonably claim that they are without lawful notice that a conspiracy to use trickery or dishonest means to obstruct the collection of taxes is a crime. Whether the government will be able to prove that defendants are guilty of the crime alleged in the indictment is a question ultimately for the jury. However, I am not here concerned with proof, but only the sufficiency of the indictment and the constitutionality of the statute as applied in this case.

I am cognizant of and concerned with possible overreaching in the employment in an indictment of the second horn of Section 371—conspiracy "to defraud the United States." This portion of the statute was drafted and used during the nineteenth century in the context of serious deficiencies in the federal criminal laws. The situation today is vastly different from that which prompted the passage of the statute, and the use of this second horn of the statute must be carefully scrutinized to avoid its application when another statute, more precisely drawn and applicable to the acts alleged, is available. This concern has prompted me to direct that the government furnish particulars and comply with discovery demands on a more comprehensive basis than would have obtained if the charges had been brought under the first horn of Section 371 or under a substantive statute.

However, I find no inadequacy in the application of the statute in this indictment, and potential problems relating to proof can properly be dealt with during the trial and in the charge to the jury. *See generally* Goldstein, *Conspiracy to Defraud the Unit-*ed States, 68 Yale L.J. 405 (1959); *United States v. Rosenblatt,* 554 F.2d 36, 40–41 (2d Cir. 1977); *United States v. Johnson,* 337 F.2d 180, 185 (4th Cir. 1964), (citing *Krulewitch v. United States,* 336 U.S. 440, 445–48, 69 S.Ct. 716, 93 L.Ed. 790 (1949) and *Kotteakos v. United States,* 328 U.S. 750, 760–74, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

SO ORDERED.