**UNITED STATES of America,**

v.

**Robert SHOHER, et al., Defendants.**

**No. 82 Cr. 508–CSH.**

United States District Court,
S.D. New York.

Jan. 21, 1983.

Richard A. Mescon, Asst. U.S. Atty., New York City, for United States.

David W. Schmidt, New York City, for defendant Neiblum.

Kevin J. McNaughton, Los Angeles, Cal., for defendant Davis.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendants in the captioned matter have been charged with mail fraud, wire fraud, and the use of false names in furtherance thereof, pursuant to 18 U.S.C. §§ 1341–43, in connection with the sale of allegedly worthless oil futures contracts to approximately four hundred investors throughout the United States. Motions seeking various forms of pretrial relief on behalf of all or some of the defendants are presently before the Court. This opinion addresses the motions of defendants Dan Davis and Harvey Neiblum for an order directing the Government to furnish a bill of particulars pursuant to Fed.R.Crim.P. 7(f) and an order permitting additional discovery pursuant to Fed.R.Crim.P. 16; and the motions of defendant Davis for disclosure of the grand jury testimony of Charles Hecht and an adjournment of the trial for purposes of defense preparation.

### I.

*Bill of Particulars*

Defendants Davis and Neiblum contend that, in light of the "sweeping nature of the allegations" against them, Davis Memorandum at 1, additional particulars are needed to enable defendants to prepare a defense, to avoid prejudicial surprise at trial, and to protect against subsequent prosecution for the same offense. While this Court has no quarrel with defendants' characterization of the threefold purpose of a bill of particulars, *see, e.g., United States v. Salazar,* 485 F.2d 1272, 1277 (2d Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974), the specificity required to meet these standards is subject to some dispute and entails exercise of the Court's considerable discretion in assessing the sufficiency of the indictment. *United States v. Tramunti,* 513 F.2d 1087, 1113–14 (2d Cir.1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Davis,* 582 F.2d 947, 951 (5th Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067. One result of the latitude accorded trial courts in making a Rule 7(f) determination, coupled with the fact-sensitive nature of the inquiry, is the limited utility of case precedent and the relative lack of concrete standards in this area. The Court is not totally without guidance, however; the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants are all relevant factors to consider. *See, e.g., United States v. Climatemp,* 482 F.Supp. 376 (N.D.Ill.1979).

Defendant Davis's argument that "the complexity of detail involved in a fifty-three count mail and wire fraud indictment" alleging "co-schemers" and "master minds" requires special particularization at the outset of the case has merit only insofar as "the charges of [the] indictment are so general that they do not advise defendant of the specific acts of which he is accused." *United States v. Leonelli,* 428 F.Supp. 880, 882 (S.D.N.Y.1977); *see also United States v. Clevenger,* 458 F.Supp. 354, 357 (S.D.N.Y. 1978). The Government has no obligation to "preview its case or expose its legal theory," *Leonelli,* 428 F.Supp. at 357, nor must it disclose the "precise manner in which the crime charged in the indictment is alleged to have been committed." *United States v. Andrews,* 381 F.2d 377, 377–78 (2d Cir.1967). In the instant action, the indictment sets forth the scheme to defraud in great detail, including the modus operandi

of the salespersons employed by defendants' corporation, American Petroleum Exchange ("APEC"), ¶¶ 5–12; illustrative examples of the misleading representations made to prospective customers, ¶ 12(a)–(k); the means by which defendants concealed their fraudulent activities, diverted profits, and elicited the confidence of APEC clients, ¶¶ 14–16; and the exact dates, names, and transactions involved in over fifty instances of alleged fraud, ¶ 17.

Defendants' requests for further particularization, except as noted below, are denied as "improper attempts to discover the evidentiary details of the prosecution's case," *United States v. Lavin,* 504 F.Supp. 1356 (N.D.Ill.1981); "to force detailed disclosure of acts underlying a charge," *United States v. Mannino,* 480 F.Supp. 1182, 1185 (S.D.N.Y.1979); or to "probe too deeply into the government's theory and method of proof," *id.* at 1186. Davis's Request 4, for example, demands particularization of how "defendants Shoher, Davis and Neiblum 'masterminded the scheme'" and of "how it is claimed defendants Emden, Alexander, Boltax. and Golden 'were salesmen for APEC.'" Similarly, defendant Neiblum asks for particularization of the manner in which he was "the 'Master Mind' of the alleged scheme," Request 10, and, with reference to the various counts, seeks details of his personal participation in, or knowledge of, the activities described. *See, e.g.,* Requests 1–3, 7, 12, 25–26, 29–31, 33, 37–39, 42–47. As noted by the Court of Appeals for this Circuit when confronted with a similar request:

"While neither the indictment nor the bill of particulars ... developed in great detail the nature of [defendant's] participation in the conspiracy, that is not required. An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged. Under this test, an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975).

Clearly the Government has adequately apprised defendants of "such ultimate facts as are needed to prepare a defense." *United States v. Orsini,* 406 F.Supp. 1264, 1266 (E.D.N.Y.1976). Indeed, in light of the indictment's considerable specificity, certain of defendants' requests for particularization border on the frivolous. Defendant Davis, for example, asks the Government to "detail each of the [false and fraudulent] representations allegedly made" to unsuspecting investors, a request that is amply answered, in the view of this Court, in ¶ 12(a)–(k) of the indictment. By the same token, defendant Neiblum's query—"Did Harvey Neiblum cause the matter referred to [in each count] to be delivered by the United States Postal Service?"—appears to be adequately answered by the Government's affirmative statement to that effect in the indictment. Defendant's demand for further particularization as to how this was accomplished, Neiblum Request 43, goes beyond the requisite scope of a bill of particulars.

Certain other requests simply probe too deeply into the Government's theory of the case. For example, defendant Neiblum's Request 41 asks: "If there was authorization, does the Government claim such authorization was invalid, illegal, or insufficient? Please explain." Requests 4 and 5 query whether Mr. Neiblum has been "indicted for fraudulent transactions in which he did not personally participate" and, if so, "based upon what theory?". Defendants' further requests for the names and addresses of every person or entity to whom fake representations were made, Davis Request 10, Neiblum Request 31; the sales office from which each transaction emanated, Neiblum Requests 14–15; the names and addresses of all APEC salespersons or individuals who participated in its formation, Davis Request 8, Neiblum Requests 8, 24; and a complete list of the several hundred APEC investors, Davis Request 8, Neiblum Request 23, must be characterized as impermissible inquiries into the "evidentiary details of the prosecution's case." *Lavin,* 504 F.Supp. at 1361. This is especially true in

light of the Government's disclosure of the date, customer name and address, and transaction involved in over fifty instances of alleged mail fraud. *See United States v. Mahany,* 305 F.Supp. 1205, 1209 (N.D.Ill. 1969) ("The indictment sets out the scheme to defraud in great detail and specifically charges three instances of mail fraud giving exact dates and persons defrauded ... it is clear that no further evidentiary details are necessary here either to prepare a proper defense, to avoid prejudicial surprise, or to defend against further prosecution for the same offense.").

Defendant Davis directs the Court's attention in particular to his Request 6, wherein he asks the Government to explain "what is meant by: (a) 'contracts for the future delivery' of oil; (b) 'contracts for speculation' ...." Defendant contends that he is entitled to further particularization of this language because it is language "also employed by the Commodity Exchange Act" and defendant wishes to be prepared to "properly plead double jeopardy in the event of prosecution for alleged violations of commodities laws." Davis Reply Memorandum at 37. While it appears to this Court that the meaning of the terms cited is fully explicated in the indictment considered as a whole, defendant's concern is, in any case, unwarranted, given the well-established rule that the entire record of a proceeding, not simply the indictment, may be referred to if a subsequent prosecution is alleged to constitute double jeopardy. *Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Haldeman,* 559 F.2d 31, 126 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Accordingly, any latent ambiguity as to the nature of the contracts sold can readily be clarified by reference to additional documents, including the trial transcript, in the event of a double jeopardy threat.

■ Defendant Davis also urges the Court to grant his request for clarification of paragraph 18 of the indictment. As noted by Mr. Davis, he is the only defendant charged with a violation of § 1342—use of a fictitious name or address in furtherance of a § 1341 scheme—on an apparently "vicarious" basis. In short, with reference to all other defendants charged in Counts 45 through 51, the Government has specified the fictitious name allegedly used by each defendant and the date on which that alias was employed. In order to clarify the indictment sufficiently to apprise defendant of "the specific act of which he is accused," *Leonelli,* 428 F.Supp. at 882, the Government is directed to inform defendant Davis of the "fictitious, false, or assumed title, name, or address," 18 U.S.C. § 1342, he is charged with using. Absent this information, defendant's efforts to prepare an adequate defense to the § 1342 charge will be significantly hampered.

■ The Government has acceded to defendant's request for identification of alleged "co-schemers known and unknown to the Grand Jury" by providing a list of twelve individuals "who the proof at trial may establish to be co-schemers with the defendants." Defendant Davis's contention that this "select list" is not sufficiently responsive to his request is rejected, with the proviso that the Government has an ongoing obligation to provide defendants promptly with the names of any additional "co-schemers" as to whom the Government expects to introduce evidence at trial. Failure to comply will result in preclusion of the evidence. Beyond this, the danger of prejudicial surprise at trial or preclusion of the opportunity for meaningful defense preparation is negligible.

## II.

*Discovery*

Defendants Davis and Neiblum make numerous requests for discovery pursuant to Fed.R.Crim.P. 16, many of which the Government has agreed to furnish in its letters of September 29, 1982 to counsel for defendants. The Government opposes any further disclosure as falling outside the scope of its constitutional and statutory obligations. This opinion addresses only those items as to which the Government's re-

sponse is inadequate or some clarification is needed. Given the substantial overlap in the discovery sought by each defendant, their requests will be addressed, for the most part, in tandem.

■ The Government has consented to Davis Requests 1–11, with the exception of Request 10(a), wherein the defendant seeks all "charts, summaries, or calculations reflecting the contents of complex or voluminous writings which may be . . . material to the preparation of the defense." The Government's willingness to provide such material to the extent that it is "intended for use by the government as evidence at the trial" sufficiently fulfills its Rule 16(a)(1)(C) obligation, with the proviso that this phrase be interpreted as including not only documents marked and offered in evidence at trial, but also documents directly relied on or referred to by Government witnesses. *See United States v. Turkish,* 458 F.Supp. 874, 882 (2d Cir.1978). The Government need not provide internally generated summations that are only speculatively material to defendant's defense preparation and which it does not intend to use at trial.

■ With regard to Davis Requests 14–16, 19–23, 34, 37, and 38(a), and Neiblum Requests 57–65, wherein defendants seek discovery of information pertaining generally to identification of defendants, the credibility of government witnesses, nonwitness declarants, and exculpatory material, the Government has agreed to comply with defendant's request to the extent required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. To reiterate that obligation, the Supreme Court in *Brady* concluded that a prosecutor's suppression of material evidence specifically requested by defense counsel contravenes a defendant's right to due process. As articulated by the Court of Appeals for this Circuit, "the heart of the holding in *Brady*" is the impermissibility of withholding evidence "favorable to the accused and material to the determination of guilt or to the appropriate punishment." *United States v. Leroy,* 687 F.2d 610, 618

(2d Cir.1982). In short, defendant is entitled to exculpatory or mitigating evidence in the Government's possession, including evidence pertinent to a material witness's credibility or reliability. *Perkins v. LeFevre,* 642 F.2d 37, 40 (2d Cir.1981). With respect to Davis Request 14 and 15, it should also be noted that "showup" or photographic identification can fairly be designated a "statement" within the purview of 18 U.S.C. § 3500(e), *United States v. Burke,* 506 F.2d 1165, 1167 (9th Cir.1974). Accordingly, statements that arguably lack either the materiality or the exculpatory nature of *Brady* materials may, on motion of defendant, be available as § 3500 material, should the identifying witness be called to testify.

■ Notably, the Second Circuit has, to some extent, circumscribed the scope of the *Brady* obligation. Evidence is not "suppressed" if the defendant knows or should know of the essential facts that would enable him to take advantage of it. *Leroy,* 687 F.2d at 618, *citing United States v. Robinson,* 560 F.2d 507, 518 (2d Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. Brown,* 582 F.2d 197, 200 (2d Cir.1977), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). The Government is not required, in other words, to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshall on their own. Further, the timing of disclosure is keyed to the doctrine's underlying due process rationale. As noted by a court in this district, "It should be obvious to anyone involved with criminal trials that exculpatory information may come too late if it is given only at trial. . . ." *United States v. Deutsch,* 373 F.Supp. 289, 290 (S.D.N.Y.1974). Accordingly, the Government is directed to disclose evidence in its possession favorable to the accused sufficiently in advance of trial to permit effective "evaluation, preparation, and presentation at trial." *Id.* In addition, the United States Attorney is directed to bring before the Court with reasonable alacrity any questions or doubts concerning its compliance with the principles of *Brady.* With

these standards in mind, this Court finds the Government's response to the above-cited requests adequate at this stage in the proceedings.

In response to Davis Requests 17–18, 27–30, 33, and 40–42, the Government has agreed to furnish, at the time for providing materials pursuant to 18 U.S.C. § 3500, witness arrest records, prior statements, any agreements made by the Government with prosecution witnesses, and any benefits conferred on or promised to potential witnesses, their families, or their businesses. While this Court's power to compel such disclosure in advance of a witness's direct testimony is curtailed by the statutory constraints of § 3500 and the law of this Circuit, *United States v. Percevault,* 490 F.2d 126, 132 (2d Cir.1974) ("[W]e hold that the government cannot be compelled to disclose . . . prior to the time prescribed by the Jencks Act. . . ."), the Government has expressed its willingness to provide § 3500 material "sufficiently in advance of the witness's testimony to eliminate the need for adjournments." Government Memorandum at 46.

Certain specific requests are still in dispute. Defendant seeks § 3500-type disclosure with respect to individuals who will not be called at trial. Davis Reply Memorandum at 51. The Government resists such disclosure, except to the extent required by *Brady,* as tantamount to "a demand for the Government's entire investigative file." Government Memorandum at 46. This Court agrees with that characterization and denies defendant's Requests 31 and 40 for the names and addresses of all persons interviewed by the Government in connection with either this case or other criminal wrongdoing by defendant. "The defendants have no right to be apprised of all investigatory work on a case." *United States v. Cafaro,* 480 F.Supp. 511, 520 (S.D. N.Y.1979). Similarly, Requests 41–42 for all nonwitness statements and interview notes and reports constitute the kind of "blanket demand," *United States v. Marshak,* 364 F.Supp. 1005, 1007 (S.D.N.Y.1973), that fails to satisfy Rule 16(a)(1)(C)'s required showing of materiality to defendant's preparation of his defense. In other words, while this Court recognizes that nonwitness statements are not within the ambit of Rule 16(a)(2)'s proscription against disclosure of statements by prospective government witnesses, and arguably within the "documents and tangible objects" category of discoverable materials, *id.,* the scope of disclosure is necessarily circumscribed by the Rule's materiality requirement. *See, e.g., United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1979) (Under Rule 16(a)(1)(C), "it is incumbent upon a defendant to make a *prima facie* showing of materiality.").

Clearly defendant's request for "all statements" and "all notes, transcriptions, or recordings" fails to make this showing. His more specific request, as set forth in defendant's accompanying memorandum, for these materials with respect to the four "aggrieved customers" cited in the affidavit of Postal Inspector Holmes is premised on defendant's belief that "these persons will be able to provide information which will be favorable to the defendants . . . and will directly bear upon their innocence." Davis Memorandum at 12. In short, defendant seeks *Brady* material with respect to these four individuals, which the Government is already directed to provide. Defendant's contention that he should be furnished with *all* materials relating to these persons so that he, rather than the Government, may make the decision as to which documents are "exculpatory" is rejected as clearly contrary to the spirit and rationale of *Brady.*

Defendants Davis and Neiblum each seek a list of the names and addresses of all the witnesses the Government intends to call in its case-in-chief. Davis Request 28; Neiblum Request 52. It is by now well established that district courts have the discretionary authority to compel pretrial disclosure of the identity of government witnesses in appropriate cases. *United States v. Cannone,* 528 F.2d 296, 300 (2d Cir.1975). As articulated by the Court of Appeals for this Circuit, the "most potent argument for compulsory disclosure . . . is that, without the benefit of such disclosure, the defense

may be substantially hampered in its preparation for trial." *Id.* at 301. The Court in *Cannone* made clear, however, that the Court's exercise of this discretion is dependent on defense counsel's ability to demonstrate, in other than an "abstract, conclusory" fashion, that disclosure of the requested witness list is material to the preparation of the defense. *Id.* at 301–302. Defendant Davis, citing to the opinion in *United States v. Turkish,* 458 F.Supp. 874 (S.D.N.Y.1978), contends that disclosure of the Government's witness list is appropriate given the complexity of the case, the number of individuals involved, and the lengthy duration of the alleged scheme. The Government resists disclosure on the ground that "defendants' claims of factual complexity are overblown" and on the further ground that certain witnesses not subject to the Government's subpoena power "might not appear or be unwilling to testify" if their identities are revealed. Government Memorandum at 45.

In the *Turkish* case relied on by defendant, five individuals were charged with conspiracy to defraud the United States through a tax scheme that involved "rigged commodity futures transactions on the Crude Oil Market." *Id.* at 876. After noting that the applicable standard is whether "a specific showing of need for disclosure by the defendant outweighs a specific showing of need by the government," *quoting Cannone,* 528 F.2d at 302, the court listed various factors to be considered in making this determination:

"(1) Did the offense alleged in the indictment involve a crime of violence?

"(2) Have the defendants been arrested or convicted for crimes involving violence?

"(3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

"(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

"(5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

"(6) Do the defendants have limited funds with which to investigate and prepare their defense?"

*United States v. Turkish,* 458 F.Supp. 874, 881 (S.D.N.Y.1978).

■ As in *Turkish,* application of these factors to the case now before the Court leads me to conclude that the balance tips perceptibly in favor of defendants. No crime of violence has been alleged by the Government nor have defendants ever been arrested or convicted for such a crime; the nature of the case suggests that the testimony will relate, in large part, to documentary evidence already in the Government's possession; the alleged offense took place over a seventeen-month period of time; and, although defendant Davis has retained private counsel, three of the defendants are represented by court-appointed attorneys. The Government's only objection—that disclosure "will increase the likelihood" that some potential witnesses "might not appear" at trial—simply tracks the language of *Turkish* and must be characterized as speculative. Indeed, the United States Attorney offers no support whatsoever for its professed concern. As in *Turkish,* the factors set forth by defendants "outweigh the government's fear of danger from disclosure." *Id.* at 881. Accordingly, the Government is directed to provide defendants with a list of the names and addresses of those individuals the Government intends to call at trial, and is further directed to update this list as required.

■ Defendants Davis and Neiblum also seek discovery of documents and information relating to the grand jury proceedings in this case. Davis Request 38(a)–(c); Neiblum Requests 58(*o*), 57(e), and 58–65 (second numbering). The Government has agreed to comply with these requests to the extent required by *Brady.* Beyond this, a defendant is not entitled to disclosure of grand jury proceedings unless a showing of

"particularized need" is made. *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1846, 16 L.Ed.2d 973 (1966). This Court finds that no such showing has been made with respect to disclosure of transcripts, grand jury instructions, or the identity of grand jury witnesses, agents, or individuals to whom grand jury materials have been disclosed pursuant to Fed.R.Crim.P. 6. Discussion of defendants' contention that certain grand jury discovery is required in connection with their allegations of prosecutorial misconduct is reserved until consideration of defendants' pending motions to dismiss the indictment for pre-indictment delay.

*Hecht Testimony*

In a separate motion, defendant Davis moves for production of the grand jury testimony of Charles J. Hecht, a corporate attorney retained by the American Petroleum Exchange Corporation during the period of time covered by the indictment. On March 5, 1980, Mr. Hecht testified before a federal grand jury regarding his duties and activities as counsel for APEC. Defendant contends that the testimony contains exculpatory material relating to Mr. Hecht's efforts, on defendants' behalf, to ensure that oil was in fact available to cover the contracts being sold to APEC customers, information pertinent to the allegations contained in paragraph 13 of the indictment. In response, the Government characterizes defendant's request as "little more than an attempt to obtain prior to trial the impeachment material to be used by the Government in cross-examining Hecht," and argues that, at most, its obligation pursuant to *Brady* is "to alert defendant to the possible use of Hecht as a defense witness." Government Memorandum at 37.

In *United States v. Leroy,* 687 F.2d 610 (2d Cir.1982), the Court of Appeals for this Circuit addressed the question of the Government's *Brady* obligation with respect to the testimony of grand jury witnesses the prosecution did not intend to call at trial. The Court concluded that disclosure of such testimony to a defendant who is "on

notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish" is not required. `Id.` at 618, quoting *United States v. Stewart,* 513 F.2d 957, 960 (2d Cir.1975). As further articulated by the Court in *Leroy,* the "rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence known only to the Government." *Leroy,* 687 F.2d at 619.

 In the instant action, defendant is clearly alerted to the exculpatory character of Mr. Hecht's grand jury testimony. Indeed, his motion is supported by the affidavit of Mr. Hecht himself, who avers that the substance of his testimony related to APEC's exercise of "due diligence" in insuring "that the positions purchased by [its] customers were, in fact, covered." Hecht Affidavit, ¶ 6. Mr. Hecht states further that he believes the information contained in his testimony "will bear directly upon [defendants'] innocence concerning the allegations that defendants were 'selling naked' . . . ." *Id.,* ¶ 7. In light of the ready availability of Mr. Hecht, an apparently cooperative defense witness, it would seem that defendant's only colorable claim to a denial of "access to exculpatory evidence" is Mr. Hecht's poor memory. Defendant argues that, because Mr. Hecht's "recollection is not as accurate today, two and one-half years later, as it was on March 5, 1980," and the "same quality of evidence" is *no longer* available, defendant is entitled to a transcript of Mr. Hecht's testimony "under the mandate of *Brady v. Maryland."* Davis Memorandum at 2. Curiously, however, Mr. Hecht's affidavit contains no averment that his memory of the events surrounding his efforts on behalf of APEC is clouded. Given that defendant is not only "on notice" of the potentially useful testimony of Mr. Hecht, but already enjoys that individual's active cooperation in the preparation of his defense, the denial of access contemplated by the *Leroy* court is not present. "In

the context of the *Brady* requirement, 'any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense.'" *United States v. Ruggiero,* 472 F.2d 599, 604 (2d Cir.1973), quoting *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 703, 17 L.Ed.2d 737 (1967) (White, J., concurring). In this case, the disparity between prosecutorial and defense knowledge is simply not great enough to require disclosure of Mr. Hecht's grand jury testimony.

*New Discovery Requests*

■ In discovery requests submitted to the Government subsequent to its September 29 letter to defendants, and therefore addressed only in its opposition papers, defendant Davis seeks impeachment, identification, and contact information concerning Government informant John Valo and three unidentified informants designated C–1, C–2, and C–3 in Postal Inspector Holmes's affidavit in support of a search warrant. The Government has agreed to furnish arrest records, prior statements, agreements made with the Government, benefits conferred, and so forth in the event any of these individuals testifies at trial, but otherwise declines to comply. As stated by the Court of Appeals for this Circuit, "The determination as to whether identification of an informer is necessary for a fair disposition of a defendant's case is a task best left to the trial court's informed discretion." *United States v. Van Orsdell,* 521 F.2d 1323, 1326 (2d Cir.1975). Exercise of this discretion entails a balancing of the important law-enforcement concerns underlying the privilege of nondisclosure and the need to ensure that defendant receives a fair trial. *See, e.g., Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957); *United States v. Prueitt,* 540 F.2d 995, 1003–04 (9th Cir.1976).

In the instant action, defendant premises the necessity for disclosure on John Valo's "leading role in the government's undercover investigation" and on the need to resolve "several issues in the defendants' pending motion to suppress evidence." The conten-

tion appears to be that, absent such disclosure, defendant will be materially handicapped in the litigation of this motion. To the extent that defendant relies on *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), however, his argument is unpersuasive, given the Supreme Court's elucidation of this opinion a decade later in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1966). In upholding a lower court's protection of an informant's identity, the *McCray* Court noted:

> "The *Roviaro* case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt. . . .
>
> "What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." *Id.* at 311, 87 S.Ct. at 1062.

■ In advance of this Court's consideration of the pending motion to suppress and for an evidentiary hearing on that question, it is premature to require the Government to compromise the ongoing viability of its investigatory apparatus by disclosing the identity and whereabouts of confidential informants. As noted by District Judge Mansfield, as he then was, even "in the event the informer's identity should become relevant at [a hearing upon a motion to suppress or at trial], the Court would be obliged, in view of the strong public policy in favor of protecting such identity, to consider all the surrounding circumstances before it could decide whether to exercise its discretion. . . ." *United States v. Garcia,* 272 F.Supp. 286, 289 (S.D.N.Y.1967). Accordingly, defendant's motion for disclosure of information regarding John Valo and C–1, C–2, and C–3 is denied.

In response to defendant Davis's additional requests, the Government states that it has made available to defendant all bank records of United States Petroleum Exchange Corporation in its possession and has returned all materials seized in the search of APEC's offices. With regard to Request F, the Government is under no obligation to report to defendant the outcome of its investigatory efforts to trace funds allegedly diverted by defendants, nor must it provide defendants with copies of the completed questionnaires it circulated to APEC investors, except, of course, as constitutionally required by *Brady* and the statutory mandate of 18 U.S.C. § 3500. Should the Government call any of these investors to testify, their statements in response to the Government questionnaire would be discoverable "statements" pursuant to the Jencks Act.

### III.

*Motion For An Adjournment*

Defendant Davis's motion for an adjournment of the trial to investigate and prepare a defense was filed in mid-December. At that time, both the Court and defendants contemplated a far earlier trial date than the tentative mid-March date now scheduled. In light of this significantly expanded time frame, the discovery already permitted by the Government, and the limited additional discovery and particularization directed by this Order, defendant's motion for an adjournment is denied.

### IV.

*Conclusion*

Defendants' requests for discovery and particularization of the indictment are granted to the extent consented to by the Government, required by 18 U.S.C. § 3500 and the doctrine of *Brady v. Maryland*, or as otherwise noted in this opinion. Defendant Davis's requests with respect to electronic surveillance will be considered in connection with defendant Neiblum's motion for disclosure of such surveillance. All other requests are denied.

Defendant Davis's motion for an adjournment is denied.

It is So Ordered.