**UNITED STATES of America,**

v.

**Diego ZULUAGA, Harold Gonzalez, Marlene Galindo, Francisco Gomez and Patricia Munoz, Defendants.**

No. 86 CR 558.

United States District Court, E.D. New York.

Dec. 10, 1986.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Joan M. Azrack, Sean F. O'Brien, Asst. U.S. Attys., of counsel), for the U.S.

Peter Kevin Wilson, New York City, for Galindo.

Patten & GaNunn (John D. Patten, of counsel), New York City, for Zuluaga.

Andrew P. Dunlevy, New York City, for Munoz.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The investigation of this narcotics case grew out of information provided by an informant. It led to the arrest of five people and the seizure of approximately fifty pounds of cocaine. Three defendants have made motions.

### A. *Galindo*

1. *Inspection of Grand Jury Minutes and Dismissal of the Indictment*

Defendant Galindo believes that the evidence as to her presented to the grand jury was legally insufficient. She accordingly seeks disclosure of the grand jury minutes, *see* Fed.R.Crim.P. 6(e)(3)(C)(ii), and ultimately dismissal of the indictment. These requests are based on her assertion that she was hospitalized or bedridden during most of the investigation and that her only nexus to the crimes charged is that she resided in the apartment in which forty-eight pounds of cocaine were discovered.

It is well settled that grand jury materials will be revealed only upon a showing of "particularized need ... or ... some similar compelling necessity," *United States v. Abrams*, 539 F.Supp. 378, 388 (S.D.N.Y. 1982). "Speculation and surmise as to what occurred before the grand jury is not a substitute for [the] factual basis [that must be] presented to warrant the extraordinary relief of disclosure of grand jury proceedings ..." *United States v. Wilson*, 565 F.Supp. 1416, 1436 (S.D.N.Y.1983).

▮ Defendant's assertion here that only her residence in the apartment was presented to the grand jury is nothing more than a conclusory or speculative allegation as to what went on in that proceeding. As such, it gives no cause to question the regularity of the grand jury's functioning, *see United States v. Gordon*, 493 F.Supp. 814, 816–17 (N.D.N.Y.1980), *aff'd*, 655 F.2d 478 (2d Cir.1981), nor does it outweigh the need for secrecy, *see United States v. Beatty*, 587 F.Supp. 1325, 1334–35 (E.D.N.Y.1984).

▮ Moreover, the government possesses more evidence against Galindo than simply her presence in the apartment. Its proffer makes it clear that the large quantity of cocaine was found in the closet of her minor son and that the other defendants visited her apartment to pick up and deliver narcotics. In these circumstances, neither disclosure of the grand jury minutes nor dismissal of the indictment is appropriate. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) ("An indictment returned by a legally constituted and unbiased grand

jury ... if valid on its face, is enough to call for [a] trial on the charge on the merits.").

### 2. James *Hearing*

■ Defendant Galino seeks a pretrial hearing to determine the admissibility of co-conspirator hearsay under Fed.R.Evid. 801(d)(2)(E). *See United States v. James,* 576 F.2d 1121, 1127–32 (5th Cir.1978), *modified in part,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). It is well settled in this circuit, however, that coconspirator "declarations that are otherwise hearsay may nonetheless be provisionally admitted pursuant to Rule 801(d)(2)(E)," *United States v. Margiotta,* 688 F.2d 108, 136 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), "subject to the trial court's determination, made at the end of the government's case, that the non-hearsay evidence is sufficient, as to each conspirator against whom such statements are sought to be introduced, to show that he or she participated in the conspiracy," *United States v. Ianniello,* 621 F.Supp. 1455, 1478 (S.D.N.Y.1985) (footnote omitted). This Court will adhere to that procedure. *See generally United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

### 3. *Severance*

Galindo seeks to be tried separately, *see* Fed.R.Crim.P. 14, arguing that because her alleged role is so minor, she will be prejudiced by the volume of evidence against the co-defendants.

The general rule that jointly indicted persons may be tried together serves several purposes. It permits a comprehensive presentation of the alleged crime and the alleged participation of each defendant; it furthers judicial economy and the convenience and safety of witnesses by avoiding multiple trials; and it prevents, to the benefit of both sides, the delay associated with successive trials. *See generally United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.),

*cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Persico,* 621 F.Supp. 842, 852 (S.D.N.Y.1985). The presumption in favor of joint trials is strong "[w]here, as here, the crime[s] charged involve[ ] a common scheme or plan." *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). A defendant thus faces a "heavy burden," *United States v. Sotomayor,* 592 F.2d 1219, 1227 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), of demonstrating "prejudice so substantial as to deny him a fair trial," *United States v. Cody,* 722 F.2d 1052, 1061 (2d Cir.1983) (citations omitted), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984).

> The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*United States v. Kahaner,* 203 F.Supp. 78, 81–82 (S.D.N.Y.1962) (footnotes omitted).

■ The jury should have no difficulty in this case. The government's proffer indicates that the evidence is not complicated and that the trial will be relatively short, thus enabling the jury to sort out the evidence as to each defendant. "Separate trials are not justified simply because (i) in a joint trial evidence will be offered against one defendant which is not relevant to, or otherwise admissible against, another defendant; or (ii) the defendants' roles in the conspiracy vary in scope or importance." *Persico, supra,* 621 F.Supp. at 853 (citations omitted). "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."

*United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir.) (citation omitted), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

Accordingly, the severance motion is denied.

### 4. *Discovery*

Defendant Galindo has made a long list of discovery demands. The government responds that it has already supplied to defense counsel all material it is required to provide under Fed.R.Crim.P. 16. Defense counsel has not referred to any particular information he believes to have been wrongfully withheld, but instead has submitted to this Court as a motion the boilerplate list of requests to which the government has apparently already responded. Accordingly, the Court will not address each item on the lengthy list. *See* Criminal Rule 3(d) of the Rules of the United States District Courts for the Southern and Eastern Districts of New York. If defendant is dissatisfied with the government's response to her discovery demands, a specific motion, with supporting brief addressed to the particular demands at issue, shall be filed within ten (10) days of the date of this Order.

### 5. *Suppression*

Defendant Galindo's final motion is addressed to the validity of the warrant for the search of her apartment. She alleges that the evidence seized should be suppressed because there was no probable cause to believe that inculpatory evidence would be found on the premises. Specifically, she argues that no facts were offered to support the reliability or basis of knowledge of the confidential informant whose tip started the investigation.

*Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), sets forth the standard to be applied by a court reviewing the issuance of a search warrant:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257, 271 (1960), 80 S.Ct. 725, 736, 4 L.Ed.2d 697.]

Applying these principles to this case, I find that suppression is not warranted.

■ The confidential informant was personally known to the affiant and had provided information leading to at least thirty-five convictions and the seizure of approximately ninety pounds of cocaine. In this investigation, the informant's first two tips—apparently acquired through conversations with some of the defendants—had proven to be accurate and had resulted in narcotics seizures. In these circumstances there was no impropriety in crediting the hearsay information. Moreover, there was independent reason to believe that cocaine might be found at Galindo's apartment. The deponent had personally observed a defendant enter the premises and leave with a bag later found to contain cocaine. In the deponent's experience, based on his own observations and the informant's reports, the apartment was a "stash pad" for narcotics. Applying "the totality-of-the-circumstances analysis" set forth in *Gates, id.,* I find that the Magistrate was fully justified in issuing the warrant. Accordingly, the motion to suppress is denied.

## B. *Zuluaga*

### 1. *Bill of Particulars*

■ Defendant Zuluaga moves for an order requiring the government to set forth certain information in a bill of particulars. Fed.R.Crim.P. 7(f). A bill of particulars has three purposes: to 1) provide the defendant with a sufficient understanding of the charges so that he can prepare his

defense; 2) avoid unfair surprise at trial; and 3) enable the defendant to raise a double jeopardy defense if subsequently prosecuted for the same offense. *United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y. 1983); *see Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). Where "facts supplemental to those contained in the indictment ... are necessary to apprise the defendant of the charges against him with sufficient precision," *Persico, supra*, 621 F.Supp. at 868, a bill of particulars is appropriate.

The government is not required, however, to disclose its evidence, *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir.1974), or its legal theory, *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977), or "the precise manner in which the crime ... is alleged to have been committed," *United States v. Andrews*, 381 F.2d 377, 377–78 (2d Cir.1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). The bill of particulars is not a general investigative tool for the defense. *Persico, supra*, 621 F.Supp. at 868; *see United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974); *see generally Shoher, supra*, 555 F.Supp. at 349–50.

■ Among the factors to be considered in determining whether particulars are warranted are "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendant ..." *Shoher, supra*, 555 F.Supp. at 349. Having reviewed defendant's requests in light of these principles, I conclude that, with one exception, particulars are unnecessary. The investigation in this case was not long, and the facts are not especially complicated. The indictment is straightforward, and discovery materials have been provided. Defendants are thus amply equipped to prepare for trial. The government will, however, be required to supply defendants with a list of any unindicted co-conspirators. *See United States v. Mannino*, 480 F.Supp. 1182, 1185 (S.D. N.Y.1979).

### 2. *Disclosure*

■ Defendant Zuluaga, too, submitted a long list of demands, but he has made specific reference to certain items that he believes the government should be required to disclose. First, he seeks early production of impeachment information. The timing of such disclosure is governed by 18 U.S.C. § 3500, however, and the government is not required to turn over the information prior to the time mandated by that statute. *United States v. Sebastian*, 497 F.2d 1267, 1269–70 (2d Cir.1974); *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir.1974).

■ The next request is for reports of interviews with individuals who will not be trial witnesses. Defendant assumes that such documents would be exculpatory and argues that they should therefore be made available under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. The government responds that it is cognizant of its obligations under *Brady* and has produced everything that it is required to disclose. This "assurance by the government that it has in its possession no undisclosed evidence that would tend to exculpate defendant justifies the denial of a motion for inspection that does not make some particularized showing of materiality and usefulness." *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir.1969). The Court is confident that the government will continue to fulfill its responsibilities by disclosing *Brady* information upon its discovery and by providing all material in a manner consistent with efficient trial preparation and presentation.

■ Finally, defendant Zuluaga seeks to have the government identify the confidential informant whose tip began this investigation. This information ordinarily is privileged, but

> [w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a

fair determination of a cause, the privilege must give way.

. . . . .

The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*United States v. Rovario*, 353 U.S. 53, 60–61, 62, 77 S.Ct. 623, 627–28, 628, 1 L.Ed.2d 639 (1957). The burden of establishing the need for disclosure rests with the defendant, who must show that in the absence of such disclosure, he will be denied a fair trial. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir.1983).

■ This standard has not been met. Defendant's argument amounts to "mere speculation that identification might possibly be of some assistance.... Disclosure should not be directed simply to permit a fishing expedition ... or to gratify the moving party's curiosity or vengeance ..." *In re United States*, 565 F.2d 19, 23 (2d Cir.1977) (citations omitted), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). Although the informant was apparently on hand at times certain defendants discussed and conducted drug deals, he was not present during or involved with the transactions that resulted in the defendants' arrest in this case. This tangential relationship to the events at issue militates against disclosure. *See United States v. Varella*, 692 F.2d 1352, 1356 (11th Cir. 1982) (disclosure of identity not required where informant is only a tipster, not an active participant in the crime, even if he is present during a critical transaction), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1392 (1983). Moreover, the government has indicated that it will call the informant as a witness and that defendants will receive § 3500 material before trial. In these circumstances, advance identification of the informant is not warranted.

3. *Suppression*

■ Zuluaga raises two objections to the search of his home. First, he asserts that there was no probable cause to believe that evidence of a crime would be found. I disagree. The deponent had observed Zuluaga enter and leave the building on numerous occasions in recent weeks, and on the day in question, the defendant had exited the building with a package of the approximate size and shape of a kilogram of cocaine. Defendant met with other defendants in the apartment, and traveled from there to Galindo's apartment, from which he exited with the plastic bag later found to contain cocaine. In the deponent's experience, narcotics traffickers often store drugs at locations other than where they live but keep in their homes customer lists and records of drug transactions. In these circumstances, I find that the magistrate had a substantial basis for concluding that there was a fair probability that evidence would be discovered in the apartment. *See Gates, supra*, 103 S.Ct. at 2332.

Second, defendant objects to the procedures followed in obtaining the warrant. He argues that the government failed to comply with certain provisions of Fed.R. Crim.P. 41(c)(2), which permits the issuance of a warrant upon oral testimony. Specifically, he contends that the Assistant United States Attorney ("AUSA") did not read the text of the warrant verbatim to the Magistrate, as is required by Fed.R.Crim.P. 41(c)(2)(B), and that the Magistrate did not direct either the AUSA or the officer acting as affiant to sign the Magistrate's name to the duplicate original warrant, as is required by Fed.R.Crim.P. 41(c)(2)(C).

A review of the transcript of the taped telephone warrant application ("Tr.") reveals that these contentions are without merit. First, the conversation between the Magistrate and the AUSA indicates that the former did in fact take down verbatim the AUSA's statements as to the location of the premises, the items for which the

officers were to search, and the offenses implicated. *See* Tr. 3–5. In fact, the Magistrate indicated that what the AUSA had told him would appear on the forms if he authorized the search.

■ Second, the Magistrate's certification of the transcript, *see* Fed.R.Crim.P. 41(c)(2)(D), indicates that after the officer got off the phone, the Magistrate and the AUSA had a further discussion "concerning only text of warrant." This portion of the tape was apparently not transcribed, but that conversation would appear to satisfy the requirement that the Magistrate and the government enter the same information on their respective copies of the warrant. It is also likely that this untranscribed colloquy included the Magistrate's instruction to enter his name on the warrant. In order to be certain, however, the government is ordered to have transcribed, if possible, the remaining portion of the tape.

In any event, even if the alleged defects in the telephone warrant procedure were established, defendant has not supplied any authority indicating that suppression would be appropriate. Congress, in enacting Rule 41(c)(2), noted that "the preferred method of conducting a search is by warrant," S.Rep. No. 95–354, 95th Cong., 1st Sess. 10, *reprinted in* 1977 U.S.Code Cong. & Ad. News 527, 534, and sought "to encourage Federal law enforcement officers to seek search warrants in situations when they might otherwise conduct warrantless searches," *id.* It has long been recognized that because warrant applications normally take place "in the midst and haste of a criminal investigation," *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), they "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion ... A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," *id.*

Defendant has identified no substantive right that was affected by the alleged defects in the procedure employed. Thus, suppression on the basis of the technicality at issue here would serve to discourage the very conduct Congress sought to encourage when it enacted Rule 41(c)(2). In the absence of any allegation or showing of bad faith on the part of the government or prejudice to defendant, the motion to suppress is denied. *See United States v. Turner,* 558 F.2d 46, 49 (2d Cir.1977) (violation of Rule 41 results in suppression only where: 1) defendant is prejudiced in that search would not have occurred or would have been less abrasive if Rule followed; or 2) there is evidence of intentional and deliberate disregard of provision of Rule).

The government has neglected to respond to Zuluaga's allegation that the officers exceeded the terms of the warrant by seizing evidence from an adjacent apartment also rented by defendant. It shall do so within ten (10) days of the date of this Order.

### C. *Munoz*

■ Defendant Munoz seeks a severance on the ground that if she were tried separately, her husband and co-defendant, Francisco Gomez, would provide exculpatory testimony on her behalf. In *United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), the Second Circuit outlined several factors a court should consider in determining whether to sever in this situation. They include:

(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial damaging impeachment.

*Id.* at 524 (citations omitted). The government focuses on the last factor and argues, in essence, that the motion should be denied because testimony by Gomez that Munoz was unaware that cocaine was in her pocketbook is implausible. This does not,

however, appear to be impeachment of the sort contemplated by *Finkelstein,* in which there were grand jury minutes incriminating the witness. *See id.* at 524.

In any event, the Court is more concerned with the first factor: the likelihood that the co-defendant would in fact testify. Accordingly, the Court will hold a brief hearing on January 16, 1987 at 2 p.m., at which time Munoz' counsel will have the opportunity to demonstrate that Gomez would waive his fifth amendment privilege. Such a showing will presumably require Gomez to take the stand; counsel for Munoz is cautioned that Gomez' counsel should also be present.

SO ORDERED.