**UNITED STATES of America, Plaintiff,**

v.

**Janet MEDINA, Defendant.**

**No. 93 CR 0422(SJ).**

United States District Court,
E.D. New York.

May 27, 1994.

Zachary W. Carter, U.S. Atty., E.D.N.Y., by Bradley Simon, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

David Van Muraskin, New York City, for defendant.

*MEMORANDUM AND ORDER*

JOHNSON, District Judge:

## INTRODUCTION

Before this Court are motions by Defendant, Janet Medina ("Medina"), to (1) direct the Government to provide a Bill of Particulars; (2) direct the Government to provide material as required by Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) suppress statements made by the Defendant and suppress the physical evidence seized from a front apartment at 58–36 Penrod Street; (4) permit inspection of the Grand Jury minutes, or in the alternative, dismiss the indictment; and (5) sever her trial from that of her co-defendants. Chief Magistrate Judge Chrein has filed a Report and Recommendation concerning the motions to suppress and this Court considers that report herein. For the reasons stated below, the motions are denied except for the motion to sever which was previously granted at a conference before this Court.

## BACKGROUND

This case arises from a Drug Enforcement Agency ("DEA") investigation of the cocaine trafficking activities of Gilberto Menesses. Through the use of confidential informants and several wiretaps, the DEA learned information concerning several other individuals and narcotics trafficking.

On May 23, 1991, the DEA learned through intercepted conversations that a quantity of cocaine was to be temporarily stored at an apartment located at 58–36 Penrod Street, Corona, New York. Later that day, DEA agents and a New York City police officer arrived at the premises and knocked on the door of the apartment identifying themselves. The Defendant was seen on the balcony of the apartment after DEA agents had knocked on the door. When the agents entered, they found narcotics in plain view in a gym bag. The agents brought the gym bag into the room where Medina was and she said "that's not mine that's my husband Alonso's." Hearing Tr. at 21–22. Soon thereafter, Medina consented, in writing, to a further search of the premises whereupon $30,961 of United States currency was discovered. Subsequent surveillance of other individuals occurred as well as additional seizures. On June 5, 1991, DEA agents executed arrest warrants for several individuals; Janet Medina turned herself in a few days later.

## DISCUSSION

*1. Defendant's Motion to Compel the Government to Produce a Bill of Particulars*

■ The Defendant has moved this Court to require the Government to provide a Bill of Particulars pursuant to Rule 7 of the Federal Rules of Criminal Procedure. It is requested that the Government disclose details with respect to the exact time and place in which Medina was allegedly in possession of narcotics as well as the exact location in which contraband was allegedly found; names and addresses of any witnesses; the exact date and time of Defendant's arrest; a detailed description of the containers in which the narcotics were packaged and its position at the time of such seizure; and whether or not a search warrant was issued. The Defendant also requests that the government reveal whether she was in physical or constructive possession of the cocaine.[1]

■ It is the practice in this Court to encourage open disclosure of the Government's case to defendants. Here, the Government has provided copies of the affidavits supporting the various wiretaps in this case,

---

1. In response to this request, the Government informed the Defendant that it was proceeding on both theories. Government's Mem. of Law in Opp'n to the Def.'s Pre–Trial Motions dated Oct. 7, 1991 at 33.

draft transcripts of the intercepted conversations, and copies of the search warrants and their supporting affidavits. The precise details of the Government's case need not be revealed. *United States v. Zuluaga*, 651 F.Supp. 746, 750–51 (E.D.N.Y.1986). The Defendant has made no specific claims of the necessity to see more details than have been provided; such general allegations cannot support the demand for a bill of particulars. *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Tramunti*, 513 F.2d 1087, 1113–14 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). Accordingly, Defendant's motion is denied.

### 2. Defendant's Motion to Obtain Brady Material

█ Defendant claims that the Government has exculpatory information that must be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Defendant properly argues that *Brady* material must be turned over immediately upon request by the defense or discovery by the Government. *United States v. Crozzoli*, 698 F.Supp. 430, 437 (E.D.N.Y. 1988). The Government has asserted that it is aware of its obligations and has averred that it will turn over any *Brady* material upon its discovery or near in time to when a witness testifies according to the practices of the Eastern District of New York. However, if Defendants have evidence that such material does indeed exist and has not been turned over in accordance with this Court's practices, this Court will conduct an *in camera* inspection of such evidence to determine whether it indeed falls within *Brady*'s scope.

█ The Defendant has also requested that the Government provide a list of all potential government witnesses. The Government has opposed this motion on the grounds that security concerns prohibit them from disclosing the identities and that the Defendant has failed to demonstrate that their need for such a list is greater than these concerns. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975) (holding that requests for a witness list must be shown to be material to the defendant's trial preparations and reasonable under the circumstances). Given the alleged links to narcotics traffickers in Colombia, the Government's concerns about security and protecting the witnesses from intimidation and obstruction of justice appear justified. Defendant has not shown a need for the witness list that overcomes these concerns.

█ The Defendant further claims that the Government has impeachment material that must be disclosed pursuant to *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). This material allegedly relates to the possible bias, motivation, mental state, criminal conduct, or other relevant information pertaining to the Government's witnesses. In this district, such material is generally turned over prior to a witness' testifying. The government asserts that it is aware of its obligations under the Jencks Act and *United States v. Payden*, 613 F.Supp. 800, 820 (S.D.N.Y.1985) and will act in accordance with this district's practice. Accordingly, Defendant's motion is denied.

### 3. Defendant's Motions to Suppress Physical Evidence and Statements

On December 15, 1992, Chief Magistrate Judge Chrein held a hearing to consider whether a quantity of cocaine and currency found in 58–36 Penrod Street, Queens, New York should be suppressed.[2] At that time, the Magistrate also considered whether statements made by the Defendant should also be suppressed. After a lengthy hearing, Chief Magistrate Judge Chrein determined that the motions to suppress should be denied.

---

**2.** In the Chief Magistrate Judge's Report and Recommendation, the Defendant is mistakenly referred to as Marlene Jimenez. Marlene Jimenez is the lead defendant in this case and is still at large; no suppression hearing has been held with respect to her. The hearing transcript reveals that the Magistrate indeed heard evidence pertaining to the seizure of evidence and statements made by Janet Medina. It is thus obvious that the Report and Recommendation concerned Janet Medina and not Marlene Jimenez. Counsel were apprised of this error in March of this year and given further opportunity to submit objections.

After reviewing the record, this court hereby affirms and adopts the Report and Recommendation issued by Chief Magistrate Judge Chrein on February 12, 1993 in the above referenced matter. Accordingly, Defendant's motions to suppress are denied.

### 4. Defendant's Motion to Inspect the Grand Jury Minutes

■■■ Grand Jury proceedings are accorded a "presumption of regularity," thus an inspection of such minutes is not granted without specific factual allegations of governmental misconduct. *See United States v. Torres*, 901 F.2d 205, 231–32 (2d Cir.), *cert. denied sub nom., Cruz v. United States*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Defendant has failed to offer any reason to inspect the minutes. Defendant has merely stated that "upon, information and belief, the essential elements of the crimes alleged against the Defendant were not established and proven by competent legal evidence, the facts of which will be more fully known when the demand for a Bill of Particulars has been answered." Def.'s Motion of Aug. 28, 1991 at 6. This Court will not permit Defendant to engage in a fishing expedition through the Grand Jury minutes. Accordingly, Defendant's motion is denied.

### 5. Defendant's Motion to Sever

This motion was granted at a conference before this Court on March 25, 1994. Accordingly, this motion is deemed moot as having been previously granted.

### CONCLUSION

Based on the foregoing, the court hereby (1) denies Defendant's motion for a Bill of Particulars; (2) denies the Defendant's motion to turn over *Brady* material; (3) affirms the Report and Recommendation of Chief Magistrate Judge Chrein denying the Defendant's motion to suppress physical evidence and statements made by her; (4) denies the Defendant's motion to inspect the Grand Jury minutes; (5) finds the Defendant's motion for severance of trial to be moot as having been seriously granted.

SO ORDERED.